**In re MIDWEST COMMUNICATIONS CORPORATION, Debtor.**

**Bankruptcy No. 91–21031.**

United States Bankruptcy Court, E.D. Kentucky, Covington Division.

Aug. 25, 1999.

J. Michael Debbeler, Cincinnati, OH, for the debtor and Leonard L. Brown.

### MEMORANDUM OPINION AND ORDER

WILLIAM S. HOWARD, Chief Judge.

This matter is before the Court on the Motion of Debtor Midwest Communications for Order on the Application of Leonard L. Brown, Inc. and Leonard L. Brown for Compensation for Services Rendered which was filed herein on April 7, 1999. The matter was heard on July 6, 1999, and taken under consideration. No objections or other responsive pleadings have been filed in regard to the motion.

Briefly, Mr. Brown and Leonard L. Brown, Inc. ("the Applicants") were hired by the debtor in May 1991 to provide certain management services. Mr. Brown then became the CEO of the debtor. When the debtor filed its Chapter 11 petition in June 1991 the Applicants continued to provide services to the debtor until its First Amended Plan of Liquidation was confirmed on December 14, 1992. Under the terms of the Plan, the Applicants were to continue providing services to the debtor in connection with litigation, resolution of other matters and supervision of the Plan distribution process. The Plan provided for compensation for these services at the rate of $200.00 per hour. The Plan further contemplated that Mr. Brown would work approximately 20 hours per month. Mr. Brown has already been compensated per the terms of the plan.

The Application presented here requests a bonus payment of $70,000.00 over and above the compensation already received. Mr. Brown related to the Court at the hearing on July 6 that he had not kept records of his time for purposes of this Application. He further related that he was in effect requesting compensation for activities that he had not felt justified in billing for under the Plan at the $200 hourly rate set out in the Plan. The Applications sets out that Mr. Brown personally accomplished or participated in the following:

"1. The sale of all inventory at about 70% of the book value. Original estimate was about 34%.

2. Collection of accounts receivable at approximately 80% of book value. Original estimate was approximately 73%.

3. The sale of fixed assets at 26% of book value. Original estimate was 15%.

4. Full collection of a $252,567.60 note from Atlantic Video. Original plan was to sell the note for $175,000.00. No takers were found even at $125,000.00.

5. The sale of Alamar note for approximately $75,000.00. Initially, recovery of any amount for this note was deemed doubtful.

6. The sale of Systems and RF Divisions of MCC to Harris Corporation.

7. The sale of Natural Resources, Inc., to Science Applications International Corporation. A major result of this sale was the termination of Liability for an unsecured claim of $5,100,000.00 against MCC.

8. The sale of DPS stock and negotiation to disallow DPS to participate, as an unsecured creditor, in any claim against MCC.

9. Collection of Preference claims. Brown participated in the settlement of all Preference Actions of more than $5000.00.

10. The sale of Headquarters Real Estate to General Cable Corporation for approximately $4,200,000.00, thereby reducing an unsecured claim by a like amount.

As a result of the above, the following has been successfully accomplished:

1. All allowed secured claims were paid 100%.

2. All administrative claims were paid 100%.

3. All tax claims were paid 100%.

4. All priority wage and medical claims were paid 100%.

5. All allowed miscellaneous claims were paid 100%.

6. Payment of approximately $3,200,-000.00 in unsecured claims to date. A final payment of approximately $1,200,000.00 is anticipated within 90 days of approval of a final Distribution Plan."

In reviewing the First Amended Disclosure Statement and First Amended Plan of Liquidation, it appears to the Court that most of the activities and their concomitant results were contemplated and even expected by the debtor. The Court recognizes that Mr. Brown's work for the debtor was *important in bringing about these good results.*

When considering applications for bonuses or fee enhancements, courts have applied various tests and analyses to determine if applicants are entitled to such payment. Recently, the Bankruptcy Court for the Western District of Kentucky went through such an analysis in *In re Big Rivers Elec. Corp.*, 233 B.R. 754 (Bkrtcy. W.D.Ky.1999). There the court was considering the application of the examiner appointed in that case for a fee enhancement. The examiner had been confronted with one of the most novel, difficult and complicated cases to arise in the Western District, and had managed to bring it to a successful conclusion. The court noted the examiner's "extraordinary skill" and "sacrifice ..., including the preclusion on accepting other work." *Id.*, at 764.

The court applied the test set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), a case which, as the court pointed out, has frequently been cited with approval by the Sixth Circuit. The elements set out in the *Johnson* case were meant to be employed to analyze an application for legal fees, but many of them apply to the Application being considered herein. These elements as set out by the *Big Rivers* court are:

1. the time and labor required;

2. the novelty and difficulty of the questions;

3. the skill requisite to perform the legal service properly;

4. the preclusion of employment by the attorney due to acceptance of the case;

5. the customary fee;

6. whether the fee is fixed or contingent;

7. time limitations imposed by the client or the circumstances;

8. the amount involved and the result obtained;

9. the experience, reputation, and ability of the attorneys;

10. the "undesirability" of the case;

11. the nature and length of the professional relationship with the client; and

12. awards in similar cases.

*Id.* at 763.

Mr. Brown certainly meets the standards of skill, experience and ability, and *helped to obtain an excellent result,* as noted above. However, the Plan terms themselves make it clear that Mr. Brown was not required to expend a great deal of time in his efforts for the debtor. He was not precluded from accepting other employment. The issues dealt with were not particularly novel or unusually difficult, but those encountered in any large Chapter 11 case. He was fairly compensated at an hourly rate commensurate with his experience. When all elements are considered, it does not appear to the Court that the Applicants are entitled to a bonus in this matter.

It is therefore ORDERED that the Motion of Debtor Midwest Communications for Order on the Application of Leonard L. Brown, Inc. and Leonard L. Brown for Compensation for Services Rendered be,

and it is hereby overruled and the requested compensation is denied.